IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| **JOHNNY MCELROY** | * | 1:14-cv-624<br>Case No. |
| **4745 WALLACE ROAD** | | |
| **OXFORD, OH 45056** | * | **JUDGE**<br>Sandra S. Beckwith |
| Plaintiff, | * | Karen L. Litkovitz |
| -vs- | | **COMPLAINT** |
| | * | **WITH JURY DEMAND** |
| **MIAMI UNIVERSITY** | | |
| **501 EAST HIGH STREET** | * | |
| **OXFORD, OH 45056** | | |
| | * | |
| Defendant. | | |
| | * | |

Now comes the Plaintiff, Johnny McElroy (hereinafter Plaintiff), and for his Complaint against the Defendant, Miami University (hereinafter Defendant), alleges and affirmatively states the following:

## I. PRELIMINARY STATEMENT

1. This is a civil rights action arising from Miami University's decision to unlawfully terminate the employment of Plaintiff Johnny A. McElroy based on impermissible considerations of race (African-American) and retaliation (prior discrimination complaints). Mr. McElroy brings this action pursuant to Title VII of the Civil Rights Act of 1964 as amended by the Civil Rights Act of 1991, 42 U.S.C. § 2000(e) *et seq.*, 42 U.S.C. § 1981, and 42 U.S.C. 42 §1983.

2. Mr. McElroy seeks an award of reinstatement and back pay as well as compensatory damages for the economic and noneconomic injuries he has suffered as a proximate result of Defendant's unlawful actions. He also seeks recoupment of his reasonable attorney fees and costs along with other relief as the Court deems appropriate.

## II. JURIDICTION AND VENUE

3. This Court has jurisdiction over Mr. McElroy's claims pursuant to 28 U.S.C. § 1331.

4. Venue in this Court is appropriate because the actions giving rise to these allegations occurred within this judicial district.

## III. PARTIES

5. Plaintiff Johnny McElroy is a resident of Butler County, Ohio.

6. Defendant Miami University is an Ohio public university located primarily in Butler County, Ohio.

7. At all times relevant to this action, Defendant Miami University employed Plaintiff Johnny McElroy in Butler County, Ohio.

## IV. ADMINISTRATIVE HISTORY

8. Plaintiff filed a timely administrative complaint with the United States Equal Employment Opportunity Commission and received notice of his right to sue on May 5, 2014. *(See Exhibit 1)*. All conditions precedent to the institution of this complaint have been fulfilled.

## V. STATEMENT OF THE CASE

9. Plaintiff was hired by Defendant on March 12, 2007, as a building and grounds assistant.

10. Plaintiff is an African-American male and a member of a protected class.

11. Plaintiff has previously complained, both internally and through state and federal administrative agencies, about discriminatory conduct by Defendant employees.

12. In 2009, after working for Defendant for approximately two years, Plaintiff complained to Defendant when a Caucasian co-worker called him a "nigger" during a disagreement.

13. Rather than properly investigate and address the Plaintiff's 2009 discrimination complaint, the Defendant issued Plaintiff discipline.

14. The Caucasian co-worker of Plaintiff, that called him a "nigger", was given less severe discipline for his conduct toward Plaintiff.

15. Ultimately, Plaintiff filed a complaint with the Ohio Civil Rights Commission and EEOC regarding the 2009 incident and the biased treatment he received.

16. Defendant employees Nadine Glaub and James Baker along with the human resources department were intricately involved in the decision to issue the Plaintiff discipline in 2009.

17. Defendant employees Nadine Glaub and James Baker along with the human resources department were intricately involved in the decision to issue more severe discipline to Plaintiff than his Caucasian co-worker.

18. Defendant employee Jim Baker was a manager over Plaintiff in 2009 and was aware of the discrimination complaints filed by the Plaintiff in 2009.

19. Defendant's human resources department responded on behalf of Defendant when the 2009 discrimination complaints were filed by Plaintiff.

3

20. At some point after Plaintiff was hired in 2007, the Defendant decided that new applicants would be subject to background checks including criminal background checks.

21. Plaintiff and others that were already Defendant employees were told they would be grandfathered and not subjected to the background checks including criminal background checks.

22. In the fall of 2012, Defendant hired a temporary employee named Andrew Bechtol.

23. Andrew Bechtol's wife was a permanent employee of Defendant in the human resources department.

24. As a temporary employee, Andrew Bechtol was assigned to the same position as Plaintiff.

25. Plaintiff worked alongside Andrew Bechtol for the first several months that Mr. Bechtol was employed by Defendant.

26. In or about December of 2012, Defendant temporarily placed Mr. Bechtol into the position of supervisor over Plaintiff.

27. Almost immediately after assuming the role of supervisor, Mr. Bechtol began treating the Plaintiff differently than his co-workers.

28. At the point that Mr. Bechtol became his supervisor, Plaintiff was the only African-American in the department.

29. Mr. Bechtol's behavior toward Plaintiff, the only African-American in the department, was noticeably different than the treatment of the Caucasian employees within the department.

30. Mr. Bechtol's behavior toward Plaintiff, the only African-American in the department, was noticeably different than the treatment of the Caucasian employees within the department.

31. Mr. Bechtol began following Plaintiff around as he did his job and was critical of the manner in which he performed.

32. Plaintiff pointed out to Mr. Bechtol that he was performing consistently with his co-workers in the department.

33. Mr. Bechtol began giving Plaintiff verbal warning for conduct that had never been a problem before and was consistent with department practice.

34. Mr. Bechtol's conduct toward Plaintiff appeared to be intended to antagonize Plaintiff and provoke a response.

35. Rather than engage in an inappropriate confrontation, Plaintiff complained to Defendant management about the treatment he was experiencing at the hands of Mr. Bechtol.

36. Defendant took no action to address the concerns raised by Plaintiff and the conduct of Mr. Bechtol continued.

37. On December 17, 2012, Plaintiff was issued a written reprimand by Mr. Bechtol for using inappropriate language.

38. Plaintiff denied the allegations in the December 17, 2012 reprimand and appealed to the manager, Mr. Baker.

39. Mr. Baker supported Mr. Bechtol and agreed with the issuance of the letter of reprimand to Plaintiff.

40. Because Mr. Bechtol had falsely accused Plaintiff of making statements, Plaintiff began carrying a pocket recorder to document exactly what was being said between Mr. Bechtol and himself.

41. When Mr. Bechtol became aware that Plaintiff was carrying a recorder, he forbid him from doing so.

42. On January 29, 2013, Mr. Bechtol issued Plaintiff a disciplinary coaching letter that referenced a meeting between management and Plaintiff on January 25, 2013.

43. Plaintiff did not work on January 25, 2013 and refused to sign a document indicating he had met with management on that date.

44. Plaintiff was very frustrated with the treatment by Mr. Bechtol and he saw the January 29, 2013 letter as another attempt on Mr. Bechtol's part to initiate a confrontation and provide false information.

45. Rather than lose his temper, Plaintiff requested to leave for the day on January 29, 2013.

46. Instead of simply allowing Plaintiff to leave, Mr. Bechtol followed him and continued his efforts to antagonize Plaintiff.

47. Plaintiff left the Defendant's premises without incident on January 29, 2013.

48. When Mr. Bechtol told Mr. Baker about his efforts to have Plaintiff sign the coaching letter, he claimed Plaintiff threatened him.

49. Mr. Bechtol then reported the alleged threat by Plaintiff to Defendant's police department.

50. Defendant's police personnel performed a background check of the Plaintiff's Computerized Criminal History (hereinafter CCH) records.

51. Defendant's police personnel searched Plaintiff's CCH records without his consent.

52. Defendant's police personnel disclosed the content of Plaintiff's CCH records without his consent.

53. Defendant employees went back and reviewed the Plaintiff's initial employment application after they were provided the CCH information.

54. Defendant employees noted that the Plaintiff's initial application did not include a response in the criminal history section..

55. After reviewing Plaintiff's application, Defendant initiated disciplinary proceeding against the Plaintiff claiming he falsified information.

56. On or about March 6, 2013, the Plaintiff was terminated by Defendant for failing to disclose the prior conviction on his initial application.

57. Defendant employees Eric Kasnick, Anthony Matheny, Patrick Toney, Harold Smith, and Krista Rice have all failed to disclose prior criminal convictions on their initial applications and were not terminated.

58. Defendant employees Eric Kasnick, Anthony Matheny, Patrick Toney, Harold Smith, and Krista Rice are all Caucasian employees that received more favorable treatment than Plaintiff for the exact same alleged conduct.

59. Plaintiff's termination by Defendant is a public record and is subject to review by the general public and potential employers.

60. The public records of Defendant employees Eric Kasnick, Anthony Matheny, Patrick Toney, Harold Smith, and Krista Rice do not contain a termination and would not have the same detrimental affect on them.

61. Defendant never provided Plaintiff the opportunity to resign his position in lieu of termination.

62. Defendant treated Plaintiff less favorably than his similarly situated Caucasian co-workers when he was accused of the exact same conduct.

## VI. FIRST CAUSE OF ACTION – TITLE VII – RACE DISCRIMINATION

63. Plaintiff repeats and reaffirms the allegations contained in paragraphs 1 through 62 above, as if fully rewritten herein.

64. Defendant Miami University discriminated against Plaintiff Johnny McElroy on the basis of race (African-American) in violation of Title VII with respect to the terms and conditions of employment.

## VII. SECOND CAUSE OF ACTION – TITLE VII - RETALIATION

65. Plaintiff repeats and reaffirms the allegations contained in paragraphs 1 through 64 above, as if fully rewritten herein.

66. Defendant Miami University retaliated against Plaintiff Johnny McElroy on the basis of prior engagement in protected activity opposing racial discrimination in violation of Title VII.

## VIII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff Johnny McElroy demands judgment against Defendant Miami University as follows:

A. Award Plaintiff reinstatement, back pay, all lost benefits, front pay, and other equitable relief;

B. Enjoin Defendant from engaging in additional discrimination and retaliation against Plaintiff;

C. Award Plaintiff compensatory damages in an amount to be determined at trial;

D. Award Plaintiff punitive damages in an amount to be determined at trial;

E. Award Plaintiff pre-judgment interest;

F. Award Plaintiff reasonable attorney fees and costs;

G. Order such other relief as the Court deems appropriate.

Respectfully submitted,

/s/ Julius L. Carter
Julius L. Carter (#0084170)
Julius L. Carter Co., LPA
130 W. Second Street Suite 1622
Dayton, OH 45402
(937) 222-7900
(937) 222-7910 Fax
jcarter@juliuscarter.com
***Trial Attorney for Plaintiff***

## JURY DEMAND

Now comes the Plaintiff and hereby demands a trial by Jury of all issues so triable.

Respectfully submitted,

/s/ Julius L. Carter
Julius L. Carter (#0084170)
Julius L. Carter Co., LPA
130 W. Second Street Suite 1622
Dayton, OH 45402
(937) 222-7900
(937) 222-7910 Fax
jcarter@juliuscarter.com
***Trial Attorney for Plaintiff***